Hornblower, C. J.
The facts of this case are briefly these : Some years ago, the plaintiff sold to Aaron Conover, one of the defendants, a tract of land in the county of Monmouth for ten ■thousand dollars, in part payment of which, he received in cash six thousand dollars, and for the residue, he took a bond, made by Aaron Conover and his brothers Ruleff Conover and Isaac Conover, the other defendants, as his sureties. In' .the year 1820, the plaintiff brought an action on this bond, and in the Term of October of that year, recovered a judgment thereon, against the defendants; the principal and interest then amounting to four thousand nine hundred and sixty-six dollars and fifty-four cents. On this judgment the plaintiff sued out execution, which was levied upon the identical property he had sold to Aaron Conover, and became himself the purchaser thereof at-sheriff's sale in 1821, for such a price as left due on the execution, about twenty-six hundred dollars. Thus it appears that the plaintiff after receiving six thousand dollars in cash, had again possessed himself of the whole property, and yet claims from the defendants the sum of twenty-six hundred dollars with interest from the year 1821. Aaron Conover having no other property, the plaintiff's only resource for the recovery of this balance, was against Ruleff and Isaac Conover, but unfortunately for him, they were insolvent, and their property subject to several prior judgments and executions to a large amount. Under these circumstances, Ruleff and Isaac Conover in the year 1821, made a joint and several assignment of all their property for the benefit of creditors, to Isaac Van Doune and John J. Ely, pursuant to the act to secure to creditors an equal and just division of the estates of debtors, who convey to assignees for the benefit of creditors, Rev. Laws, 674. This assignment was made with the approbation of the plaintiff in this case, and the several other execution creditors of the said Ruleff and Isaac Conover, and they consented that the assignees should sell all the estate real and personal of the assignors, and *489 apply the proceeds in the first place, to the satisfaction of the several judgments and executions in the order in which they were entitled to priority, and the surplus, if any, pro rata, among the creditors that should come in under the assignment. Vanderveer the plaintiff in this cause, soon after, and within the time limited by law, presented his claim to the assignees, for the balance so as aforesaid due him on his execution, but upon a settlement of the accounts of John J. Ely, the surviving assignee, in 1836, it appeared that the whole estate had been exhausted in satisfying the judgments and executions that were prior to the plaintiff’s, except a small balance of twenty-seven dollars and twenty-eight cents, remaining in the hands of the surviving assignee, but which (as I understand the case) was applicable to the execution of one Bray, which was prior to the plaintiff’s. Finding this to be the case, the plaintiff Vanderveer in 1837, issued a fi.fa. de bon. et ter. for the residue, on his judgment in this cause, against all the defendants. In October Term, 1837, the Court of Common Pleas of Monmouth county, on motion in behalf of Ruleff and Isaac Conover, set aside this execution so far as respected them and their property, considering them and their property, acquired by them since the said assignment, as discharged from all liability to the plaintiff, on account of the said judgment.
Upon this state of facts, the application to this court is, for a writ of Mandamus to the Common Pleas of Monmouth, commanding them to proceed to execute the said judgment according to law.
Whether such writ is the appropriate remedy, where an inferior court after j udgment refuses to award an execution j or where one has been issued, sets it aside, and makes an order, as was done in this case, that the defendant stand discharged from the judgment, it is not now necessary to decide. The facts presented to the court, fully support and justify the order made by the Common Pleas. To say nothing of the hardship of the case, if the defendants, Ruleff and Isaac Conover, were still liable for the balance due on this judgment, it is enough for their purpose, that the law is clearly with them.
By the 14th section of the act, Rev. Laws, 676, it is plainly enacted, that if any creditor shall “ come in under the assignment,” and exhibit his demand in the manner prescribed by that *490 act for a dividend, he shall be wholly barred from having after-wards any action or suit at law or in equity, against the debtor or his representatives, except in cases of fraud or concealment of property by the-debtor.
No pretence of any fraud or concealment is set up in this case, but several reasons were urged at the bar, why the plaintiff should not be precluded from pursuing his claim-, by execution against the defendants, and,-
1st. It was said the plaintiff did not exhibit his demand under oath, according to law; the oath having been made before a justice of the peace,-instead of a judge of the court.
Whatever objection the assignees, or other creditors, might have made to the plaintiff’s claim on this ground, it does not lie in his mouth to set up as a reason why he should now be permitted to. pursue the- defendants. He was admitted as a creditor, and has not been subjected to any prejudice, for want of a sufficient affidavit.
2dly. It was contended that no creditor, except such only as are compelled to take a dividend, are prohibited from pursuing the debtor, whereas the plaintiff was a judgment creditor, entitled, not to a dividend, but to be paid in full, and that therefore the exhibition of his claim, to the assignees, was a nullity, and could not prejudice him.
But this objection goes upon mistaken grounds.. It supposes the judgment creditor is preferred to the-whole extent of his judgment, by the statute. This is not so. All that is said about mortgagees and judgment creditors, is in the-first section of the act, and that only enacts, that if the assignee gives a preference in his deed of assignment, to any creditor over another, such preference shall be void, unless such preferred creditor is a mortgagee or a judgment creditor, whose judgment has not been confessed, in contemplation of an assignment, and for the mere purpose of giving such creditor a priority. If therefore the assignee does, in very terms, prefer a mortgagee or bona-fide judgment creditor, such preference shall not be void, but the mortgagee, or judgment creditor shall still retain his priority, to the extent of the property bound by his mortgage or judgment. The preference given him by the assignor, does not alter his condition;, he is neither benefited nor prejudiced by it. The debtor, by making an as *491 signment, whether he prefers such creditor or not, cannot affect his security. If he does not prefer him, the mortgage or judgment must still be first paid, so far as the property mortgaged, or hound by judgment or execution, will satisfy him, and no further: If on the other hand the debtor does prefer such creditor, such preference does not entitle him to any rights beyond what his mortgage or judgment has already secured to him. Certainly the Legislature did not mean, while seeking to secure an equal and just division among creditors, to enable a debtor by preferring a creditor, who happens to have a mortgage or a judgment, to devote the whole of his property to the payment of such preferred creditor, to the exclusion of all others.
Now if this construction of the act, be a true one, then the plaintifFs argument fells to the ground. The defendant may have property not bound by the mortgage, or judgment, and for so much of the debt as is not secured by the mortgaged property, or by the property reached by the judgment or execution, he is a creditor at large, and may come in under the assignment for a dividend upon such excess. If therefore the plaintiff’ in this case, apprehending that the property actually bound by his judgment or execution, might not be sufficient to satisfy him, thought proper to come in under the assignment, he had a right to do so. By doing so, he did not waive his priority as a judgment creditor, so far as respected the property bound by the judgment or execution, but he became entitled to a dividend upon any balance that might remain due to him, after exhausting that property • and consequently by the very terms of the statute, barred himself from ever proceeding by suit at law or in equity against the defendant, for such balance of his debt. But
3dly. It was argued, that this bar cannot extend to a judgment creditor, because he may proceed by execution, without any new suit, cither at law or in equity.
The fallacy of this argument is obvious. The Legislature plainly intended, that if a debtor makes a fair surrender of his property, every creditor who voluntarily presents his claims, and comes in for a dividend, shall be precluded from ever after suing for his debt or any part of it. As to such creditor the debtor is forever discharged from the debt. To say that, because ho already has a judgment, he may, after taking a dividend, or *492 after taking his chance for one, still pursue the debtor by execution, for the balance, is to overlook the spirit of the statute, and to practice an oppression, if not a fraud on the honest debtor.— Besides, a proceeding by execution is a proceeding by suit at law. An execution is a regular part of an action.
Eourthly. It was insisted that the bar extends only to such creditors as come in for a dividend, and that exhibiting the claim under oath, is not coming in for a dividend within the meaning of the statute.
This argument is without a shadow of a foundation — presenting claim as a creditor, is coming in for a dividend. The assignee is to report under oath, the claims presented to him, and the court and the assignee are to proceed to a settlement of the estate, and to declare a dividend upon the basis of such claims— and again, the third section provides that the claim shall be put in under oath, and the eleventh section limits the time within which they must be thus exhibited, and then by the fourteenth section it is enacted that creditors “ who shall come in under said assignment, and exhibit their demands, as aforesaid, for a dividend,” shall be barred &c. Thus clearly shewing that every creditor putting in his claim under oath, does in the manner prescribed by the act, come in for a dividend.
Lastly, Though faintly, it was contended that no dividend was in fact made, and that therefore the plaintiff is not barred from pursuing his claim at law.
But such is not the language of the statute. It does not say, that the creditor, who receives a dividend, shall be barred, &c., but if he presents his claim, and thereby comes in for a dividend, he shall not afterwards have any suit, &c. The property fairly assigned, may be exhausted in satisfying prior liens— it may depreciate in value, or be destroyed by fire or tempest; or it may be claimed by a title paramount to that of the assignor; yet I apprehend, in the absence of all fraud on his part, creditors, by presenting their claims, become parties to the assignment, they take it for better or worse, and cannot after-wards because disappointed in the result, turn around and sue the debtor. Upon the whole, I am happy to find that the law fully sustains the order made by the court of Common Pleas in this case. There is nothing in that order to prevent the plaintiff from *493 proceeding on the execution against Aaron Conover, if he thinks proper to do so. Though the execution is against all the defendants, the plaintiff may direct the sheriff to levy on the property of Aaron Conover only. Waller v. Green et al., Sayer’s R., 309. The rule must be discharged with costs.
Ecu®, J. Joseph Vandervere obtained judgment against Aaron, Ruliff and Isaac Conover, in the Court of Common Pleas of Monmouth in the term of October 1820, on their bond, for debt and costs, amounting to 4996 dollars and fifty-six cents, and thereon sued an execution to January term, 1821, which was levied on all the lands and goods of the defendants. It was subject, however, to five older executions, which were entitled to be satisfied out of the same property before it. The plaintiff afterward sued out an alias execution returnable to October term, 1821, which was levied on the defendants’ growing crops, and on which there was no other lien.
In this state of things, two of the defendants, Rulif and Isaac, assigned all their property, real and personal, encumbered and unencumbered, to trustees, for the equal benefit of all their creditors, allowing no preference of one creditor over another, excepting mortgage and judgment creditors, conformably to the first section of the statute { 'Rev. Laws, 674.) The deed bears date the 5th of November 1821, and John J. Ely as surviving trustee executed the trust as directed by the statute. The plaintiff united with the other creditors in recommending this measure, believing that trustees could sell the property to greater advantage for creditors than the sheriff, and that it would bring more than was requisite to satisfy every demand. The trustee made all that he possibly could out of it, but it principally consisted of real estate which had fallen at that time so greatly below its previous value, that it barely paid off the executions prior to the plaintiff’s, except the proceeds of certain crops amounting to two hundred dollars, on which he had the prior lien. It appeared on a full settlement of the trust in the Orphan’s Court, by the trustee, in July term, 1826, that only twenty-seven dollars of the net proceeds of all the property remained undisposed of, in the hands of the trustee, and that almost nothing remained for the plaintiff, whereupon, eleven years after the close of the trust, or *494 sixteen years after the assignment, the plaintiff sued out an execution on his judgment, for the residue of it, which was levied on property that Ruliff and Isaac, two of the defendants, had newly acquired by their industry in those sixteen years after the date of the deed by which they had surrendered all their property. On the return of this execution to July term, 1837, the Court of Common Pleas granted a rule to shew cause why it should not be set aside; not because the residue of the debt was paid or .extinguished, there being no bankrupt law for the extinction of debts in this state, but because the remedy of'it was taken away by the act “ to secure to creditors an equal and just division of the estates of debtors, who convey to assignees, for the benefit of creditors.” {Rev. Laws, 674.) And the court being of opinion, on hearing the proofs and allegations under that rule, that all remedy for the residue is taken away by that statute, from creditors coming in under such assignments, and that the plaintiff had exhibited his demand for a dividend under that deed, they ordered the execution to be set aside so far as it affects the interest or estate of Ruliff, and Isaac Conover, and that they be forever discharged from any liability upon that judgment. The plaintiff now applies to this court for a mandamus to the Common Pleas, to proceed and award execution on that judgment, according to law, and thus brings up the point whether his remedy is taken away by the operation of the statute.
The fourteenth section provides, “ that with respect to the creditors who shall come in under said assignment, and exhibit their demands as aforesaid, for a dividend, they shall be wholly barred from having any action or suit, at law, or in equity, against such debtors or their representatives, unless the said creditor shall prove fraud, in the said debtor or debtors, with respect to the assignment, or concealing his estate,” &c. It appears that the trustee advertised as the statute directs, for all claims against said estate, to be made within the time it prescribes, or they would be forever barred of a dividend thereof; that after this notice, the plaintiff exhibited his demand as the statute requires, to the trustee, who filed with the clerk of the court of Common Pleas, a true list, under oath, of the creditors who claimed to be such, with a true statement of their respective claims, among which the plaintiff’s demand is one. The plaintiff thereby secured for *495 himself, every right to a dividend in the trust estate, that any creditor could acquire under the deed and the operation of the statute. As a creditor by execution, he could call on none but the sheriff'; but he acquired other and peculiar rights under the statute, by virtue of the trust-deed, particularly that of calling the trustee to account in the Orphans’ Court, and he enforced his right under the assignment, by citing him to that account, and pursued it till their decree was obtained. If the balance, twenty-seven dollars, which the Orphans’ Court found remaining in the hands of the trustee, had been as many thousands, he would have compelled the trustee, by attachment, under the ninth section, to pay him his whole demand, as a creditor who had come in under the deed of trust, and neither the trustee, nor after creditors, nor the debtors, nor the law itself, could have withstood his rights. Besides the benefit of all liens to their full extent, that belonged to him as a preferred judgment creditor, at the time of the assignment, he came in for any residue that might be, and took his chance for a dividend out of this trust fund, on the express condition set down in the statute, of barring himself of any action, or suit at law, or in equity, for such residue. He was not compellable to do it; he might have rested on his judgment; he had his option, and having acted freely and voluntarily, lie must stand to the condition ; otherwise the 14th section which was intended to be the life and sustaining principle of the whole statute, will become a dead letter. His resort to any other remedy at law or in equity, is not only a violation of agreement, but a fraud on the trust; for it is taking all that was to be got under the assignment, under an agreement to pursue no other remedy, and then setting it at defiance. Ho man can be allowed in the face of the statute, to do so. It was suggested that the debtors acted fraudulently, in misrepresenting the value of the assigned property, but of this there is no evidence, for an inventory was openly annexed, enabling each creditor to exercise his own judgment about the value of the property, the incumbrances on which were not only public, but appear to have been as well known then, as they are now, to the plaintiff. This barring of every creditor who comes in for a right to a dividend, does not depend on what the property shall bring at public sale, nor on any amount of dividend; neither is any certificate of the *496 debtor’s discharge, to be made under this statute, therefore the cases cited under the bankrupt law, have no application to this matter. And I apprehend that this act applies in its very terms, to judgment and mortgage creditors, as well as to other creditors, expressly saving to the former class, the benefit of their liens, and when such liens have been applied as far as they will go, that those creditors may come in, if they please, for the residue, upon the same terms as other creditors, equally in proportion to their demands. They remain creditors to the amount of such residue, and an exclusion of such as are willing to come in under the statute, and upon the terms, of it, for a dividend, would contravene the just principles and whole intent of the statute.
A doubt was flung out, whether an execution may not lie, as the statute bars only “an action, or suit;” but though an execution be perhaps strictly no action, it is technically a suit at law, awardable only on the suit of the party. 1 Inst., 291. This judgment is against three defendants jointly, and if it is barred against two of them by a legal assignment of property, I do not perceive how the court can divide the execution (which is entire, and must be grounded on the judgment) by awarding a several execution against the third one; but as against two of them, a suit is positively barred by the statute, and therefore in my opinion, the mandamus applied for must be refused.
White, J. concurred. Dayton, J. gave no opinion, having been of counsel.

Mandamus refused, and rule■ discharged with costs.

Cited in Moses v. Thomas, 2 Dutch. 128; Garretson v. Brown, Id. 439-444; Bell v. Fleming’s Ex'rs, 1 Beas. 25; Potts v. N. J. Arms & Ordnance Co., 2 C. E. Gr. 519.